RECEIVED

MAR 2 4 2008    Page 2

MICHAEL W. DOBBINS
CLERK, U. S. DISTRICT COURT

PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF
HABEAS CORPUS BY A PERSON IN STATE CUSTODY

| United States District Court | District Northern, Western Division |
|---|---|
| Name (under which you were convicted): Armando Manrique | Docket or Case No.: 08 C 50048 |
| Place of Confinement: Dixon Correctional Center | Prisoner No.: _ B79414 |
| Petitioner (include the name under which you were convicted) | Respondent (authorized person having custody of petitioner) |
| Armando Manrique | v.    Nedra Chandler (Warden Dixon C.C.) |
| The Attorney General of the State of | Illinois |

PETITION

1. (a) Name and location of court that entered the judgment of conviction you are challenging: _____
   Circuit Court of the 14th Judicial Circuit,          Henry county, Illinois

   (b) Criminal docket or case number (if you know): _95-CF-318-4_____

2. (a) Date of the judgment of conviction (if you know): May 7, 1996

   (b) Date of sentencing: __August 23, 1996_____

3. Length of sentence: _56 years_____

4. In this case, were you convicted on more than one count or of more than one crime? Yes ☒  No ☐

5. Identify all crimes of which you were convicted and sentenced in this case: ____Controlled
   substance trafficking, unlawful possession with intent to deliver a controled
   substance, and possession of a controlled substance.

6. (a) What was your plea? (Check one)

   (1)  Not guilty ☒                    (3)  Nolo contendere (no contest) ☐

   (2)  Guilty ☐                        (4)  Insanity plea ☐

   (b) If you entered a guilty plea to one count or charge and a not guilty plea to another count or
   charge, what did you plead guilty to and what did you plead not guilty to?_____

   N/A

_____
_____
_____

(c) If you went to trial, what kind of trial did you have? (Check one)

Jury ☑        Judge only ☐

7.  Did you testify at a pretrial hearing, trial, or a post-trial hearing?

Yes ☒  No ☐

8.  Did you appeal from the judgment of conviction?

Yes ☒  No ☐

9.  If you did appeal, answer the following:

(a) Name of court: Appellate Court of Illinois 3rd District
(b) Docket or case number (if you know): No. 3-96-0744
(c) Result: Conviction Affirmed
(d) Date of result (if you know): August 21, 1997
(e) Citation to the case (if you know): People v. Manrique (3-96-0744 unpublished)
(f) Grounds raised: Defendant argued that the trial erroneously denied his pre-trial motion to supress cocaine.
_____
_____
_____
_____
_____

(g) Did you seek further review by a higher state court?  Yes ☑  No ☐

If yes, answer the following:

(1) Name of court: Supreme Court of Illinois
(2) Docket or case number (if you know): No. 3-96-0744
(3) Result: Denied
_____
(4) Date of result (if you know): N/A
(5) Citation to the case (if you know): People v. Manrique (No. 3-96-0744 unpublished)
(6) Grounds raised: Defendant argued that the trial court erroneously denied his pre-trial motion to suppress cocaine.
_____
_____

(h) Did you file a petition for certiorari in the United States Supreme Court?  Yes ☐  No ☒

If yes, answer the following:

(1) Docket or case number (if you know): N/A _____

(2) Result: _____ N/A _____

_____

(3) Date of result (if you know): _____ N/A _____

(4) Citation to the case (if you know): _____ N/A _____

10. Other than the direct appeals listed above, have you previously filed any other petitions,

applications, or motions concerning this judgment of conviction in any state court?

Yes ☒  No ☐

11. If your answer to Question 10 was "Yes," give the following information:

(a) (1) Name of court: _Circuit Court of the 14th Judicial Circuit, Henry County_, Illino

(2) Docket or case number (if you know): _People v. Manrique, No. 95-CF-318-4_

(3) Date of filing (if you know): _June 8, 1998_

(4) Nature of the proceeding: _Post Conviction Petition_

(5) Grounds raised: _____ Ineffective assistance of Counsel because of attorney's

failure to call Montoya as a witness at the suppression hearing and at

trial to testify that the defendant did not know about the cocaine.

_____

_____

_____

_____

_____

_____

(6) Did you receive a hearing where evidence was given on your petition, application, or

motion?        Yes ☒   No ☐

(7) Result: _The court denied defendant relief._

(8) Date of result (if you know): _January 18, 2001_

(b) If you filed any second petition, application, or motion, give the same information:

(1) Name of court: _Circuit Court of the 14th Judicial District, Henry county_, Illinoi

(2) Docket or case number (if you know): _People v. Manrique, No. 95-cf-318-4_

(3) Date of filing (if you know): _February 15, 2002_

(4) Nature of the proceeding: _2nd Post conviction Petition_

(5) Grounds raised: _Actual innocence claim containing affidavits from both

the defendant and montoya stating that Montoya was willing to testify

the defendant had no knowledge of the cocaine.

_____

_____

_____
_____
_____
_____

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?     Yes ☑   No ☐

(7) Result: _Petition was denied_____

(8) Date of result (if you know): _December 16, 2005_____

(c) If you filed any third petition, application, or motion, give the same information:

(1) Name of court: _____N/A_____

(2) Docket or case number (if you know): _____N/A_____

(3) Date of filing (if you know): _____N/A_____

(4) Nature of the proceeding: _____N/A_____

(5) Grounds raised: _____N/A_____

_____
_____
_____
_____
_____
_____
_____
_____

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?     Yes ☐  No ☑

(7) Result: _____N/A_____

(8) Date of result (if you know): _____N/A_____

(d) Did you appeal to the highest state court having jurisdiction over the action taken on your petition, application, or motion?

(1)  First petition:      Yes ☒    No ☐

(2)  Second petition:   Yes ☒    No ☐

(3)  Third petition:     Yes ☐    No ☐

(e) If you did not appeal to the highest state court having jurisdiction, explain why you did not:

_____
_____N/A_____
_____

12. For this petition, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the <u>facts</u> supporting each ground.

<u>CAUTION: To proceed in the federal court, you must ordinarily first exhaust (use up) your available state-court remedies on each ground on which you request action by the federal court. Also, if you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.</u>

GROUND ONE: <u>Ineffective Assistance of Counsel</u>

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

Trial counsel violated the petitioners 6th amendment rights to the U.S. Constitution where his representation fell below the standard of reasonableness prejudicing his trial where but for his ineffectiveness the outcome could have very well been different when he failed to call a witness that was available, and willing to testify on behalf of the petitioner that he had no knowledge of the cocaine in the vehicle and was in fact totally innocent of the charges against him.

(b) If you did not exhaust your state remedies on Ground One, explain why: _____ N/A _____

(c) Direct Appeal of Ground One:

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ❑   No ☒

(2) If you did <u>not</u> raise this issue in your direct appeal, explain why: It was not imcluded in the post trial motion for a new trial, and therefore, it could not have been properly raised on direct appeal.

(d) Post-Conviction Proceedings:

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?   Yes ☒   No ❑

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: Post Conviction Petition.

Name and location of the court where the motion or petition was filed: Circuit Court of Henry County, 14th Judicial District, Henry County Court House, Cambridge, Il. 61238

Page 7

Docket or case number (if you know): Case No. 95-CF-318-4

Date of the court's decision: January 18, 2001

Result (attach a copy of the court's opinion or order, if available): Denied

_____

_____

(3) Did you receive a hearing on your motion or petition?

    Yes ☒  No ☐

(4) Did you appeal from the denial of your motion or petition?

    Yes ☒  No ☐

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

    Yes ☒  No ☐

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: __Apellate Court of Illinois 3rd District, Courthouse 1004 Columbus St., Ottawa, Il. 61350

Docket or case number (if you know): No. 95-CF-318-4

Date of the court's decision: October 19, 2001

Result (attach a copy of the court's opinion or order, if available): Denied

_____

_____

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue: _____ N/A _____

_____

_____

_____

(e) Other Remedies: Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground One: ____N/A____

_____

_____

GROUND TWO: __Free standing actual innocence claim  supported by affidavits stating the petitioner had no knowledge of the cocaine__

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

_____Petitioner presents claim that he is innocent of the charges against him where he had no knowledge of the cocaine in the vehicle (as he has maintained from the inception of these charges), and presented an affidavit from the driver of the vehicle stating he was the possessor of the cocaine, and that the petitioner had no knowledge of the drugs being in the vehicle.

_____

_____

_____

(b) If you did not exhaust your state remedies on Ground Two, explain why: _____N/A_____

_____

_____

_____

(c) Direct Appeal of Ground Two:

   (1) If you appealed from the judgment of conviction, did you raise this issue?

   Yes. ☒   No. ☐

   (2) If you did <u>not</u> raise this issue in your direct appeal, explain why: _____N/A_____

_____

_____

(d) Post-Conviction Proceedings:

   (1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

   Yes ☒   No ☐

   (2) If your answer to Question (d)(1) is "Yes," state:

   Type of motion or petition: __Post Conviction Petition__

   Name and location of the court where the motion or petition was filed: __Circuit Court of Henry County, 14th Judicial District, Henry County Court House, Cambridge, Il. 61238__

   Docket or case number (if you know): __No. 95-318-4__

   Date of the court's decision: __February 9, 2006__

   Result (attach a copy of the court's opinion or order, if available): __Denied__

_____

_____

   (3) Did you receive a hearing on your motion or petition?

   Yes ☒   No ☐

   (4) Did you appeal from the denial of your motion or petition?

   Yes ☒   No ☐

   (5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

   Yes ☒   No ☐

   (6) If your answer to Question (d)(4) is "Yes," state:

   Name and location of the court where the appeal was filed: __Appellate Court of Illinois 3rd District, Courthouse 1004 Columbus St. , Ottawa, Il. 61350__

Docket or case number (if you know): ___Case No. 95-318-4_____

Date of the court's decision: ___June 8, 2007_____

Result (attach a copy of the court's opinion or order, if available): ___Denied_____

_____

_____

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this
issue: _____N/A_____

_____

_____

_____

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative
remedies, etc.) that you have used to exhaust your state remedies on Ground Two: ___N/A_____

_____

_____

_____


GROUND THREE: _____N/A_____

_____

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):
_____N/A_____

_____

_____

_____

_____

_____

(b) If you did not exhaust your state remedies on Ground Three, explain why: _____N/A_____

_____

_____

_____

(c) **Direct Appeal of Ground Three:**

  (1) If you appealed from the judgment of conviction, did you raise this issue?

    Yes ❑  No ❑

  (2) If you did not raise this issue in your direct appeal, explain why: _____N/A_____

_____

_____

(d) Post-Conviction Proceedings:

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?          Yes ❑   No ❑

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: _____ N/A _____

Name and location of the court where the motion or petition was filed: _____ N/A _____

Docket or case number (if you know): _____ N/A _____

Date of the court's decision: _____ N/A _____

Result (attach a copy of the court's opinion or order, if available): _____ N/A _____

(3) Did you receive a hearing on your motion or petition?

Yes ❑   No ❑

(4) Did you appeal from the denial of your motion or petition?

Yes ❑   No ❑

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

Yes ❑   No ❑

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____ N/A _____

Docket or case number (if you know): _____ N/A _____

Date of the court's decision: _____ N/A _____

Result (attach a copy of the court's opinion or order, if available): _____ N/A _____

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue: _____ N/A _____

(e) Other Remedies: Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Three: ___ N/A ___

GROUND FOUR: _____ N/A _____

_____

(a) Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

N/A

_____

_____

_____

_____

_____

_____

_____

_____

(b) If you did not exhaust your state remedies on Ground Four, explain why: _____ N/A _____

_____

_____

_____

_____

(c)  Direct Appeal of Ground Four:

  (1) If you appealed from the judgment of conviction, did you raise this issue?

      Yes ❑   No ❑

  (2) If you did not raise this issue in your direct appeal, explain why: ____ N/A _____

      _____

(d) Post-Conviction Proceedings:

  (1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a

  state trial court?          Yes ❑ No ❑

  (2) If your answer to Question (d)(1) is "Yes," state:

  Type of motion or petition: _____ N/A _____

  Name and location of the court where the motion or petition was filed: _____ N/A _____

  _____

  Docket or case number (if you know): _____ N/A _____

  Date of the court's decision: _____ N/A _____

  Result (attach a copy of the court's opinion or order, if available): ____ N/A _____

  _____

  _____

  (3) Did you receive a hearing on your motion or petition?

      Yes ❑   No ❑

  (4) Did you appeal from the denial of your motion or petition?

      Yes ❑   No ❑

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

Yes ☐  No ☐

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____ N/A _____

Docket or case number (if you know): _____ N/A _____

Date of the court's decision: _____ N/A _____

Result (attach a copy of the court's opinion or order, if available): _____ N/A _____

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue: _____ N/A _____

(e)  **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Four: _____ N/A _____

13.  Please answer these additional questions about the petition you are filing:

(a)  Have all grounds for relief that you have raised in this petition been presented to the highest state court having jurisdiction?     Yes ☒   No ☐

If your answer is "No," state which grounds have not been so presented and give your reason(s) for not presenting them: _____ N/A _____

(b)  Is there any ground in this petition that has not been presented in some state or federal court? If so, which ground or grounds have not been presented, and state your reasons for not presenting them: _____ N/A _____

14.  Have you previously filed any type of petition, application, or motion in a federal court regarding the conviction that you challenge in this petition?     Yes ☐   No ☒

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, the issues raised, the date of the court's decision, and the result for each petition, application, or motion filed.  Attach a copy of any court opinion or order, if available.  N/A

_____

_____

_____

_____

_____

_____

15.  Do you have any petition or appeal _now pending (filed and not decided yet)_ in any court, either state or federal, for the judgment you are challenging?    Yes ☐    No ☒

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised. _____ N/A _____

_____

_____

_____

16.  Give the name and address, if you know, of each attorney who represented you in the following stages of the judgment you are challenging:

(a) At preliminary hearing: _____

_____

(b) At arraignment and plea: _____

_____

(c) At trial: _Eugene L. Stockton, Henry County Public Defender, 217 W. 2nd Street, Kewanee, Il. 61443_

(d) At sentencing: _Eugene L. Stockton, Henry County Public Defender, 217 W. 2nd Street, Kewanee, Il. 61443_

(e) On appeal: _Martin DeWulf, Attorney at Law, 220 N. Main, Kewanee, Il. 61443_

_____

(f) In any post-conviction proceeding: _1st Post; Jay Weigman, P.O. Box 377, Somonauk, Il. 60552, and 2nd Post; Mark D. Fisher, 1100 Columbus St., Ottawa, Il. 61350_

(g) On appeal from any ruling against you in a post-conviction proceeding: _1st Post; Jay Weigman P.O. Box 377, Somonauk, Il. 60552, and 2nd Post; Mark D. FIsher, 1100 Columbus St., Ottawa, Il. 61350_

17.  Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?      Yes ☐    No ☒

(a) If so, give name and location of court that imposed the other sentence you will serve in the future: _____ N/A _____

_____

(b) Give the date the other sentence was imposed: _____ N/A _____

(c) Give the length of the other sentence: _____ N/A _____

(d) Have you filed, or do you plan to file, any petition that challenges the judgment or sentence to be served in the future?    Yes ❑   No ❑

18. TIMELINESS OF PETITION: If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2244(d) does not bar your petition.*  _____ N/A _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

---

* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2244(d) provides in part that:

(1)  A one-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of —

(continued...)

STATE OF ILLINOIS    )
                     )  SS
COUNTY OF LEE        )

## NOTICE OF FILING AND PROOF OF SERVICE

To: U.S. District Court
    Northern District of Illinois
    Western Division
    C/O Office of the Clerk
    211 S. Court St.
    Rockford, Il 61101

    Please be advised that on _March 19th_____, 2008, I shall have cause
to file in the office of the above named party the attached Petition for Writ of
Habeas Corpus, Motion To Proceed In Forma Paupperis, Affidavit and supporting documents.

    I, Armando Manrique, first being duly sworn upon oath, depose and avers that the
foregoing is true and correct in substance and fact.

                                        _Armando Manrique_____
                                        Armando Manrique #B79414
                                        2600 N. Brinton
                                        Dixon, Il. 61021

Subscribed and sworn before me on this
_19th_ day of _March____, 2008.
_Carole S. O'Neal_____
Notary Public

"OFFICIAL SEAL"
Carole S. O'Neal
Notary Public. State of Illinois
My Commission Exp. 07/31/2010

## STATEMENT OF FACTS

On November 7, 1995, defendant Armando Manrique was charged by information with controlled substance trafficking, a Class X felony [720 ILCS 570/401.1 (West 1994)], unlawful possession with intent to deliver a controlled substance, a Class X felony [720 ILCS 520/401(a)(2)(D) (West 1994)], and unlawful possession of a controlled substance, a Class X felony [720 ILCS 570/402(a)(2)(D) (West 1994)]. Specifically, it was alleged that on November 6, 1995, Manrique, Guillermo Carvajal, Andres Elken, Miguel Londono, Iraida Sanchez and Niurca Torres knowingly and without lawful authority brought more than 900 pounds of cocaine into Illinois with intent to deliver it (Count I), possessed with intent to deliver 900 or more pounds of a substance containing cocaine (Count II), and possessed 900 or more pounds of a substance containing cocaine (Count III) (C2-3).

On March 21, 1996, Armando Manrique's case was severed from his co-defendants' cases (C269). Manrique was tried before a jury on May 7, 1996 (R573, *et seq.*).

Illinois State Police Sergeant Floyd Blanks testified that he stopped a 27-foot motor home for speeding on I80 just west of Atkinson at 6:40 a.m. on November 6, 1995. He gave the driver, Elken Montoya, a written warning and asked for permission to search the motor home. Montoya gave his permission. State Police Trooper Anna Segura, a canine officer, responded to the scene and proceeded to search the motor home with her dog after the occupants of the motor home -- Montoya, Armando Manrique, Miguel Londono, Niurca Torres, Iraida Sanchez and Guillermo Carvajal -- had exited the vehicle. Segura told Blanks she found suspected cocaine. The witness then entered the vehicle. He saw black plastic garbage bags containing bricks of cocaine hidden inside several storage cabinets and fold-down bunk beds, and on the floor around a bunk bed located in the rear of the motor home. A shoulder bag full of clothing, which belonged to defendant Manrique, was lodged into the opening of one of the fold-down bunk beds containing cocaine (R592-605). A receipt for repairs made to the vehicle in Pennsylvania, dated October 31, 1995, was found on defendant's person or in his shoulder bag (R605). The witness further testified that a hand-

1

held camcorder, containing a video tape, was found inside the motor home. The tape, which was played for the jury, contained footage of Manrique and various co-defendants, both inside and outside the motor home. One section of the tape showed Manrique driving the vehicle (R606, 608-611).

On cross-examination, Blanks admitted that he did not see any cocaine or black garbage bags in plain view when he first entered the motor home. Nor did he smell cocaine inside the vehicle. Nor was cocaine found in defendant's bag. Blanks opined that defendant's bag could have been pushed into the opening in the fold-down bunk bed without having to open the bed (R613-615, 618).

Illinois State Police Trooper Anna Segura testified that she and her drug-sniffing canine, Prince, were called to assist Sergeant Blanks on I80 on the morning of November 6, 1995. She and Prince searched an RV Blanks had pulled over and found several black plastic garbage bags containing bricks of cocaine (R624-627, 629). When she first entered the motor home, Segura did not see or smell anything leading her to believe that the vehicle contained cocaine (R632).

Illinois State Police Officer Richard Shannahan testified that he, too, responded to the scene on the morning of November 6, 1995. He opined that the cocaine, which was divided into one-kilo (1000 grams) bricks, was packaged for delivery. The amount of cocaine indicated to him that it was not possessed for personal use. According to Shannahan, the street value was approximately 62 million dollars (R633-634, 637, 640-641). The witness further testified that more than one person was likely to be involved in the transporting of that much cocaine. Hand-held radios with cigarette-lighter adapters found in the vehicle could be used to communicate with another vehicle or to update other interested parties on the progress of the operation. In his experience, it was not unusual for a vehicle transporting a large quantity of drugs to travel with a "chase car" which could divert the attention of police from the "load vehicle" (R639-640).

On cross-examination, Shannahan stated that no "chase car" was seen traveling with the motor home, and that weapons, commonly used by major drug dealers, were not found

in the motor home (R642). Shannahan saw closed black garbage bags in plain view in the rear of the motor home. But he could not tell, just from looking at them, what was inside the bags. Nor did the bags give off any odor (R638, 643-644).

Illinois State Police Officer Mike Britt testified that he interviewed Armando Manrique at State Police headquarters in East Moline. Manrique denied any knowledge of the cocaine found in the motor home. Manrique maintained that Elken Montoya had invited him to join Montoya and the others on a sight-seeing trip while Manrique was on vacation in Los Angeles. The trip had begun on November 4. Manrique told Britt he had not seen cocaine in the motor home, and that it must have been loaded before he got in (R645-649).

Following Britt's testimony, the jury was allowed to view a lab report to which the parties stipulated (R660-661). The report, which was compiled by forensic scientist Debra Minton, states that 14 packages were found, in her opinion, to contain 180,305.9 grams of cocaine (C277-280). The State then rested (R664).

Defendant Armando Manrique testified in his own behalf and denied any knowledge of or involvement with the cocaine. Manrique lived with his wife in Miami but often worked in New Jersey as a carpenter and asbestos remover (R665-666). He originally met Andres Montoya in Miami (R694-695). In mid-October, he took a trip with Montoya, Miguel Londono, and Londono's wife Niurca Torres in the motor home. The tape of Manrique driving the motor home was taken during the October trip. On October 19, they dropped Manrique off at his temporary residence in New Jersey and continued on their way (R667-669). On October 30, Montoya telephoned Manrique from Pennsylvania and said he was having some problems with the vehicle. Manrique, who spoke better English than the others, drove an hour and a half to where the others were staying in Pennsylvania and arranged for the vehicle to be repaired (R672-674). Subsequently, on November 4, while on vacation in Los Angeles, Manrique ran into Montoya and Montoya invited him to take another trip in the motor home. Manrique accepted (R676-680). During the trip, the heater in the rear of the vehicle was not working so Manrique and the others stayed in the front (R686). He did not

3

see any garbage bags or cocaine in the motor home, and he did not hear anyone say anything about cocaine (R687).

Following defendant's testimony, the defense rested (R723). The parties then presented closing arguments (R723-740), and the jury was instructed on the law, including the law of accountability (C295). Following deliberations, the jury returned verdicts of guilty of all three charges -- controlled substance trafficking, unlawful possession with intent to deliver a controlled substance, and unlawful possession of a controlled substance (R752, C332-334).

A sentencing hearing was held on August 23, 1996 (R754, *et seq.*). Before the court at sentencing was a presentence investigation (C340-357, 359-360) showing that defendant had no prior criminal convictions and only a few traffic offenses (C347, 359). Armando Manrique was 41 years old, having been born in September 1955 (C340). He was married for the second time in 1993 and had two children (C348). He was self-employed as a carpenter and asbestos remover (C349).

Manrique exercised his right of allocution and maintained his innocence (R762). Relying in aggravation on the amount of cocaine found in the motor home and the harm it could cause if sold to customers, the judge ultimately imposed a sentence of 56 years imprisonment (R768-773). The sentencing order stated that the sentence was for the Count I conviction of controlled substance trafficking, and that the Counts II and III offenses of unlawful possession with intent to deliver a controlled substance and unlawful possession of a controlled substance were lesser-included offenses (C366-367).[1]

---

[1] Count I of the information classified the controlled substance trafficking offense as a "Super X" (C2). Pursuant to 720 ILCS 570/401.1 (West 1994), the penalty for controlled substance trafficking was not less than twice the minimum, and not more than twice the maximum, term of imprisonment for the same amount of controlled substance as provided in 720 ILCS 570/401 (West 1994). The applicable sentencing range in Section 401 for this amount of cocaine was 15 to 60 years imprisonment. 720 ILCS 570/401(a)(2)(D)

Defendant filed a timely notice of appeal and the Office of the State Appellate Defender was appointed to represent him (C368-371).

On direct appeal, defendant argued that the trial judge erroneously denied his pre-trial motion to suppress the cocaine. This Court rejected the argument and affirmed defendant's conviction and sentence. *People v. Manrique*, No. 3-96-0744 (Rule 23 order, August 21, 1997) (C491-501).

On June 8, 1998, defendant filed a *pro se* petition for post-conviction relief arguing, *inter alia*, that his trial attorney was ineffective for failing to call co-defendant Andres Elken as a witness during the suppression hearing and at trial (C375-389). On August 18, 1998, the petition was summarily dismissed as frivolous and patently without merit (C403). On appeal, the appellate court reversed the dismissal order and remanded for further proceedings because the judge had improperly relied on the State's written response to defendant's petition in entering the first-stage dismissal order. *People v. Manrique*, No. 3-98-0706 (Summary order, September 17, 1999) (C414-416).

On November 9, 1999, the State filed a written response to defendant's petition which contained an affidavit from defendant's original trial attorney stating that Andres Elken Montoya's trial attorney told counsel (a) she would not allow counsel to interview Montoya, and (b) Montoya would plead his Fifth Amendment right against self-incrimination if called as a witness by Manrique (C418-429).

An evidentiary hearing was held on January 18, 2001 (R776, *et seq.*). After hearing testimony from both Armando Manrique and his original trial attorney, Henry County Public Defender Eugene Stockton, the judge denied relief, finding, first, that Elken was unavailable as a witness during Manrique's trial-court proceedings, and, second, that, even if Elken had testified on defendant's behalf, there was not a reasonable probability that the outcome would have been different. The judge also thought that, perhaps, the failure to call Elken as a

_____

(West 1994). Consequently, the sentencing range for defendant's offense was 30 to 120 years imprisonment.

witness could have been raised on direct appeal (R811-816). The judge's decision to deny post-conviction relief was subsequently affirmed by the appellate court. *People v. Manrique*, No. 3-01-0107 (Rule 23 order, October 19, 2001).

On February 15, 2002, defendant filed a second *pro se* petition for post-conviction relief. Supported by affidavits attested by Armando Manrique and Andres Elken Montoya, the petition argued that Montoya was willing to testify that he possessed the cocaine and that Manrique did not possess or have any knowledge about the cocaine. The petition further alleged that, if called as a witness, Montoya would have given such testimony at Manrique's trial. Finally, the petition alleged that this was newly-discovered evidence because Manrique had no contact with Montoya, and was unable to secure an affidavit from Montoya, until the two men wound up at the same prison in September 2001 (C475-507).

On April 5, 2002, the circuit judge summarily dismissed the petition, finding that it was a late, successive petition, that defendant failed to show the delay was not due to his culpable negligence, and that the claim could have been raised in defendant's first petition (C523).

Defendant filed a timely notice of appeal and the Office of the State Appellate Defender was appointed to represent him (C512-515).

In a published opinion rendered on July 23, 2004, the appellate court, with one Justice dissenting, reversed the summary dismissal of defendant's post-conviction petition and remanded the cause for second-stage proceedings. *People v. Manrique*, 351 Ill. App. 3d 277, 813 N.E.2d 1095 (3d Dist. 2004) (C522-534) (Appendix B). The majority of the court held that defendant's petition and supporting affidavits "presented the gist of a claim of actual innocence that implicates a fundamental miscarriage of justice." 813 N.E.2d at 1099 (C529).

On February 17, 2005, the judge appointed private counsel to represent Manrique (C537).

On August 18, 2005, counsel filed an amendment to defendant's *pro se* petition. The amendment adopted and incorporated the *pro se* petition (C543). It also was accompanied

6

by an amended affidavit from Elkin Andres Montoya[2] which swore that he was willing to testify at Manrique's trial and would have testified that Manrique was not present when controlled substances were loaded in the motor home and hidden out of plain sight, Montoya never told Manrique there were controlled substances in the motor home, Manrique never asked or said anything about controlled substances, and Montoya never saw Manrique discover controlled substances in the motor home (C544-545). On August 18, 2005, counsel also filed the requisite Supreme Court Rule 651(c) certificate (C582).

On September 21, 2005, the State filed a motion to strike portions of Montoya's original and amended affidavits on the ground that they stated personal opinions, not facts (C594). On September 21, 2005, the State filed a motion to dismiss the amendment to the petition on the grounds that defendant's claim could have been raised in his original post-conviction petition and that he had not made a substantial showing of a constitutional violation (C586-589).

On September 30, 2005, the court heard and denied the State's motions to strike and dismiss (R826-841). In so ruling, the judge stated: "I really agree with the dissent, but I have to follow the case. . . . I don't agree with it, but it's the law . . . ." (R841).

The State filed an answer to defendant's petition on October 5, 2005 (C596-599). An evidentiary hearing was then held on the petition on December 16, 2005 (R846, et seq.).

Andres Montoya[3] testified through an interpreter that he was serving a prison sentence for drug trafficking (R851-852). He would have testified at Armando Manrique's trial but no one asked him to do so (R853-854). Following Manrique's trial, Montoya first had personal contact with him at Stateville Correctional Center in 2000 (R854). In 1995, Montoya was present when cocaine was loaded into a motor home in Los Angeles. Manrique was not present at that time. Nor was Manrique present during previous conversations between Montoya and the cocaine supplier (R855-856). The cocaine was

---

[2] That is how the affiant's name appears in the affidavit (C544-545).

[3] That is how the witness' name appears in the record (R851).

7

contained in black garbage bags and was placed under beds, in cabinets, and underneath a couch (R856-857). Montoya never said anything to Manrique about drugs being placed in the motor home (R857) or about the presence of drugs in the motor home (R858-859). Manrique subsequently joined Montoya on a trip in the motor home (R857). Montoya drove and was responsible for seeing to it that the cocaine reached its intended destination (R858-859). Montoya never opened the bags or saw them opened by Manrique or anyone else during the trip (R859-860). Nor did Montoya ever move any of the bags (R860). Manrique never said anything about drugs during the trip (R858-859). During the trip, Manrique slept in the front of the motor home; no drugs were loaded in that part of the vehicle (R858).

On cross-examination, Montoya testified he had no pending appeals (R861). Iraida Sanchez was one of the passengers in the motor home when it was stopped by police (R863). Montoya testified at her trial and said she was not present when the drugs were placed in the motor home and he did not tell her drugs were present in the motor home (R864-865). On redirect examination, Montoya testified Sanchez rented the motor home (R865).

Armando Manrique, 50 years old, testified that Montoya did not testify at his trial. He wanted Montoya to testify but was told by his attorney Montoya could not testify at Manrique's trial (R866-867). Following his trial, he first encountered Montoya at Stateville Correctional Center in December 2000. At that time, he asked Montoya why he would not testify at Manrique's trial. Montoya said he was never asked (R868). Manrique then filed his post-conviction petition (R869). At the time of the hearing, Manrique was incarcerated at Western Illinois Correctional Center (R867).

Following arguments by both sides, the judge denied post-conviction relief, stating his opinion that Manrique's jury would not have reached a different verdict had it heard Montoya's testimony (R886-888).

Defendant filed a timely notice of appeal and the Office of the State Appellate Defender was appointed to represent him (C649-651).

Defendant argued on appeal that the cause should be remanded for a new trial because the testimony presented at the evidentiary hearing was new, material, noncumulative

8

and so conclusive that it would probably lead to a not guilty verdict in the event of a retrial. The appellate court, with one justice dissenting, affirmed the denial of post conviction relief in a rule 23 order issued on June 8, 2007.

Defendant then filed a petition for leave to appeal in the Illinois Supreme Court. On November 1, 2007 the court denied his petition.

The following Petition for Habeas Corpus relief follows:

**ARGUMENT**

I. **THE STATE COURT IMPROPERLY APPLIED THE SUPREME COURT PRECEDENT OF INEFFECTIVE ASSISTANCE OF COUNSEL WHERE TRIAL COUNSEL VIOLATED THE PETITIONER'S 6TH AMENDMENT RIGHTS OF THE UNITED STATES CONSTITU- TION BY PREJUDICING PETITIONER'S TRIAL WHEN HE FAILED TO INVESTIGATE OR CALL HIS CO-DEFENDANT TO TESTIFY AT TRIAL PRESENTING EXCULPATORY EVIDENCE TO THE JURY CORROBORATING PETITIOENRS INNOCENCE WHICH WOULD HAVE VERY LIKELY CHANGED THE OUTCOME OF HIS TRIAL.**

The 6th amendment of the United States Constitution states;

> "In all criminal prosecutions the accused shall enjoy the right...
> to be informed of the nature and cause of the accusation;
> to be confronted with the witness against him, to have compulsory
> process for obtaining witnesses in his favor, and to have assistance
> of counsel for his defense."

The text of the 6th amendment requires not merely the provisions of counsel to the accused, but assistance which is to be for his defense. Thus the core purpose (as intended by the drafters) of the counsel guarantee was to assure assistance at a trial when the accused was confronted with both the intricacies of the law and the advocacy of the public prosecutor. (See; U.S. v. Ash, 413 U.S. 300,309, 37 L. Ed. 2d 619, 93 S. Ct. 2568) (1973).

The petitioner has been denied the protections of his 6th amendment rights where his counsel acted ineffectively in his representation by not calling, or investigating a witness that could have exonerated petitioner causing a breakdown in the adversarial process during the trial, making the petitioner's custody unconstitutional, and proper for Habeas Corpus relief based on the state courts decision        which are in contradiction to well established United States supreme court, and constitutional law.

**Standard of review**

The United States Supreme Court precedent used to measure whether ineffective assistance of counsel has occurred is the two prong test of Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); (1) Defendant must show that counsels performance was deficient, and fell below the objective standard of

10

reasonableness, and (2) The defendant must show that there is reasonable doubt

that but for counsels unprofessional errors the result would have been different.

According to the AEDPA a petitioner must also establish that the state courts

decision is "contrary to" clearly established federal law "if the state court applied

a rule that contradicts the governing law set forth" by the Supreme Court or "confronts

a set of facts that are materially indistinguishable from a decision of the Supreme Court

precedent and nevertheless arrives at a result different from Supreme Court precedent."

(See; 28 USC § 2254(d), Ellsworth v. Levenhagen, 248 F. 3d 634, 638 (7th Cir. 2001),

and Williams v. Taylor, 329 U.S. 405-6, 120 S. Ct. 1485 (2000)). With respect to the

unreasonable application prong a petitioner must demonstrate that the state court

identified the correct governing legal rule but unreasonably applied it to the facts

of the case. Id., at 407, 120 S. Ct. 1495; Matheney v. Anderson, 253 F. 3d 1025,

1041, (7th Cir. 2001), Washington v. Smith, 219 F. 3d 620, 628 (7th Cir. 2000).

### counsel's failure to present a proper adversarial testing to the states case

The adversarial breakdown in the trial occurred when petitioners testimony

claiming he was actually innocent of the charges was heard by the jury (the only

witness called by the defense), and petitioner's co-defendant Elken Montoya was not

called to corroborate petitioner's testimony nor was an adequate investigation

conducted into Mr. Montoya's availability and willingness to testify, although Mr.

Montoya was available and willing to testify to the facts that; the petitioner

did not possess knowledge of the controlled substances, was not present when the

controlled substance was loaded into the RV hidden out of plain sight, that he never

told petitioner about controlled substances, that he never saw petitioner discover

controlled substances in the vehicle, and that petitioner remained in the front

of the vehicle where no cocaine was found (see Exhibit A). Furthermore, Mr. Montoya

would have testified that he was solely responsible for the controlled substance

in the RV, was present when it was loaded into the RV, and also for its delivery

11

to its intended destination (see Exhibit A). Mr. Montoya was willing to incriminate himself in order to allow an innocent man (the petitioner) to be exonerated of the charges against him.[1]

Under the Strickland test there is no question that if the jury would have been afforded the opportunity to hear Mr. Montoya's testimony the outcome of the trial would very well been different, and had the state courts properly applied Strickland this issue would have prevailed.

The decision not to call Mr. Montoya and thoroughly investigate the matter cannot be dismissed as trial strategy, nor a reasonable decision by competent counsel because of its exculpatory nature. In the 6th circuit the court held; "the decision not to contact a witness who was with the defendant during the events that led to his arrest could not be considered "strategic", and as a result defendant was prejudiced because witnesses would have directly contradicted complaints and suggested an innocent explanation for the incident." (Workman v. Tate, 957 F. 2d 1339, (6th Cir. 1992). (Also see; Burt v. Uchtman, 422 F. 3d 557, (7th Cir. 2005), "to avoid deficient performance, counsel has an obligation for purposes of the 6th amendment either to investigate possible defenses or make a reasonable decision that particular investigations are unnecessary."), and (Hampton v. Leibach, 347 F. 3d 219 (7th Cir. 2003), "Petitioner was prejudiced by his attorney's ineffectiveness in failing to investigate and present exculpatory eyewitness ..., [and] the failure to investigate and present exculpatory witness

---

1    Although the fact is disputed where Mr. Montoya presented an affidavit introduced as newly discovered evidence in petitioner's 2nd post conviction petition  that states he was never contacted to testify and would have been willing to forgo his 5th amendment right to self incrimination had he been asked to testify.

Mr. Montoya's attorney stated in an affidavit presented by the state during petitioner's 1st post conviction petition that had Mr. Montoya been called he would have pled his 5th amendment rights.

likely affected the outcome of petitioners trial.") It seems more likely than not that petitioners attorney never attempted to contact his co-defendant to testify because Mr. Montoya's attorney never mentioned it to him, and it was ultimately up to Mr. Montoya to decide whether he wanted to testify or plead his 5th amendment rights and as he stated in his affidavit, had he been contacted he would have testified. Also Mr. Montoya's testimony cannot be considered dilatory or simply impeaching, it is admissible and noncumulative. (See; U.S. v. Williams, 106 F. 3d 1362,1367 (7th Cir. 1997)).

The truth is best discovered by powerful statements on both sides of the question. The petitioner was denied the opportunity to submit the prosecutions case to a meaningful adversarial testing because of his trial counsels error in failing to call his co-defendant to testify at which point the breakdown in the process occurred. (See; U.S. v. Chronic, 466 U.S. 648, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984), "If the process loses its adversarial character as a confrontation between adversaries, the constitutional guarantee has been violated.").

Trial counsels error has undermined the very purpose of the criminal justice system by letting an innocent man's testimony be heard in front of a jury without presenting his co-defendants corroborating and exculpatory testimony that very well would have granted the petitioner his freedom had the jury been allowed to hear this testimony. (See;Brecht v. Abramson, 507 U.S. at 627, 113 S. Ct. at 1716, "Federal courts will find any errors made in state courts harmless unless the defendant can show that the error had an injurious effect in determining the juries verdict."), and (Herring v. New York, 422 U.S. 853, 862, 45 L. Ed. 2d 593, 95 S. Ct. 2550, "The very premise of our advocacy system of criminal [trials] is that partisan advocacy on both sides of a case will best promote the ultimate objective, that the guilty be convicted and the innocent go free.")

One cannot speculate whether the jury as sole judge of the credibility would have accepted or rejected Mr. Montoya's testimony as the state courts would have

us do based upon their misapplication of the law contrary to supreme court precedent
cited in this action. The petitioner should have been entitled to the benefit of
allowing to present to the jury his co-defendant's exculpatory testimony corroborating
his innocence, and presenting the accuracy of his defense as <u>Strickland</u>, <u>Chronic</u>, and
the 6th amendment require, but his counsel's incompetence denied him his rights. The
petitioner's guilt would have likely been overcome by Mr. Montoya's testimony solidifying
his defense of innocence and changing the outcome of the trial because it was the most
crucial link in the petitioner's case.

The State Court's decision contradicts <u>Workman</u>, and <u>Hampton</u> both rulings of the federal
courts when they state that trial counsel's decision could be considered strategic, and
that his failure to investigate and present an exculpatory witness was not sufficient error
under the 2nd prong of <u>Strictland</u> to create reasonable probability that the outcome would
have been different. The state court relied on Mr. Montoya's saying he believed the
petitioner "might" not have been found guilty ruling that the word "might" and the
2nd prong of <u>Strickland</u>'s "reasonable probability" standard were in such contrast in
thier meaning  that the ineffective counsel issue must be denied.

The Black's Law Dictionary defines the word Might as;"Equivalnt to "had power" or
was possible" or "have the physical or moral opportunity to be contingently possible."
The word Reasonable as; "Fit and appropriate to the end in view. Fair, proper, just,
moderate, suitable under the circumstances." And Probability as; "A condition or state
created when there is more evidence in favor of the existence of a given proposition
than there is against." Although Mr. Montoya is was not at the time familiar with the
proper legal vernacular according to the definitions of "might" and "reasonable probability"
one can say that they are practically synonymous in meaning both eluding to possibility,
and under the 2nd prong of <u>Strickland</u> that's all that is necessary.

The petitioner's 2nd Post Conviction Petition was reversed by the appellate court for
being dismissed at the summary dismissal stage and the court stated;

"The absence of Montoya's testimony calls into question the accuracy of
the defendants conviction. Given the circumstantial nature of the case,
the omission of the testimony is sufficiently prejudicial to violate due
process and raise concerns about a miscarriage of justice."

If not this conclusion alone by the appellate court does not prove the gravity of trial

counsels error, and the state courts misapplication of federal law in denying petitioner's

ineffective counsel claim then what can? Had the appellate court used the proper standard

in reviewing this issue (People v. Coleman, 206 IL1. 261, 277, 794 N.E. 2d 275, 286) (2002)

where error must be found that is clearly evident, plain, and undisputable they would have

granted relief on this issue. Habeas corpus relief is proper in this matter for the reasons

stated above.

II. THE STATE COURT IMPROPERLY APPLIED SUPREME COURT PRECEDENT IN THEIR
DENIAL OF PETITIONER'S FREE STANDING ACTUAL INNOCENCE CLAIM BASED ON NEWLY
DISCOVERED EVIDENCE WHERE HIS CO-DEFENDANT ELKEN MONTOYA PRESENTED AN
AFFIDAVIT IN THE PETITIONER'S 2ND POST CONVICTION PETITION STATING THE
PETITIONER HAD NO KNOWLEDGE OF THE CONTROLLED SUBSTANCE RECOVERED FROM
THE RV AND THAT IT WAS HIM (MR. MONTOYA) WHO WAS RESPONSIBLE FOR THE
COCAINE WHERE HE LOADED IT , HID IT IN THE VEHICLE, AND WAS RESPONSIBLE
FOR ITS DELIVERY TO ITS INTENDED DESTINATION.

**Standard of review**

In matters of free standing actual innocence a petitioner claims actual innocence,
but there is no constitutional error that occurred in their trial. The standard of
review for such claims are judged according to the Herrera standard (Herrera v.
Collins, 506 U.S. 390) (1993). The Herrera standard requires that a petitioner
present new evidence of innocence that is so convincing that "no rational juror
could vote to convict the defendant in light of the new evidence."

Another standard of review used in determining actual innocence is the Schlup
standard (Schlup v. Delo, 513 U.S. 298) (1995), where a petitioner can bring a
claim of actual innocence based on newly discovered evidence where constitutional
error has occurred but some procedural default prevents federal consideration. A
petitioner must make a showing under this standard that a "miscarriage of justice"
would occur unless his claims are heard and that the new evidence presents sufficient
reasonable doubt as to guilt and is stronger than the evidence the jury has relied
upon to find its guilty verdict.

To obtain relief in habeas corpus proceedings concerning matters of newly
discovered evidence submitted after a trial to prove a claim of actual innocence
a petitioner must show that with no amount of due diligence could this evidence have
been acquired at trial. (See; U.S. v. Veras, 51 F. 3d 1365, "In meeting the requirements
for new trial based on newly discovered evidence defendant must show that evidence
came to his knowledge only after trial, could not have been discovered sooner had
defendants exercised due diligence, is material, not merely impeaching, or comulative
and could probably lead to acquital in the event of a retrial.")

## Admissibility of evidence

Petitioner from the moment he was arrested to the present has maintained that he is innocent of the charges. To his knowledge (because of his inability to speak to his co-defendant), from what his trial attorney conveyed to him Mr. Montoya was not willing to testify on behalf of the petitioner and no due diligence could have forced Mr. Montoya to do so if he chose not to in observance of his 5th amendment rights. Although, Mr. Montoya refutes the account that petitioner's counsel made an attempt to contact him and further states the fact in his affidavit that he was willing to forgo his 5th amendment rights in order to exonerate . . the innocent petitioner (see Exhibit A) the fact still remains consistent ˙ that no due diligence on petitioner's part whether attributed to his attorney's ineffectiveness or his co-defendant's attorneys keeping Mr. Montoya from testifying and not informing him of petitioner's request to have him testify could have gotten the newly discovered evidence to be admitted at the time of his trial, and it is undisputed that the first opportunity that the petitioner had to speak with his co-defendant was in December of 2000 at which time he was told by Mr. Montoya that he was never contacted to testify for the petitioner and would have done so if he would have been informed that the petitioner was requesting him to do so (see Exhibit A). Further, the evidence is material, not merely impeaching or comulative therefore meeting the requirements of admissibility for newly discovered evidence.

## Constructive possession

In the case at bar the newly discovered evidence seriously raises a reasonable doubt as to petitioner's guilt. The evidence relied upon to convict the petitioner was purely circumstancial, presumptive, and inferential in nature. Under the theory  of constructive possession; ownership, dominion, and control  must be established. (See; U.S. v. Jackson, 51 F. 3d 646). The newly discovered evidence states  that Mr. Montoya exercised ownership, dominion, and control over the controlled substance found

in the RV and that petitioner had no knowledge, control, ownership, or dominion over the cocaine. In order to prove constructive possession on the part of the petitioner mere presence is not enough to establish it. (See; U.S. v. Manzella, 791 F. 2d 1163) (7th Cir. 1986), "To be convicted of possessing drugs defendant must have ultimate control over drugs; it need not have been literally in his hands or on premises that he occupied but he must exercise right to possess them, and mere associati with those who possess drugs is not good enough."). In, Ulster County Court v. Allen, 442 U.S. 140, 60 L. Ed. 2d 777, 802, 99 S. Ct. 2213 the U.S. supreme court discusses how the presumption of a defendants guilt because of his presence in an automobile is insufficient to establish constructive possession;

> "To "possess" is to have physical possession or otherwise to exercise control or dominion over tangible property. Plainly mere presence of an individual in an automobile without more does not indicate that he exercises "dominion or control" over everything within it. As the court of appeals noted, there are countless situations in which individuals are invited as guests into vehicles the contents of which they know nothing about much less have control over. Similarly those who invite others into their automobiles do not generally search them to determine what they have on their person ."

In, Valarde v. U.S., 972 F. 3d 826 (7th Cir. 1992), the courts held that the newly discovered evidence presented would likely not have affected the juries verdict because the defendant had drugs on his person, but in the instant case it is not such. The newly discovered evidence unequivically outweighs and casts serious doubt on the evidence relied upon to determine the juries verdict. Although presence can be a relevant factor in trial on a possession charge (see; Valarde), as already previously stated mere presence isn't enough, and the other outlying factors must be considered. The outlying factors in this case are not sufficient when held up against the newly discovered evidence, and would have resulted in the acquital of the petitioner had the new evidence been presented at trial.

### Justice McDade's dissenting opinion
In Justice McDade' dissenting opinion of the appeal of petitioners 2nd post conviction petition she stated;

"The majority here affirm the trial courts judgement dismissing the
defendants petition on the grounds that the jury would not have reached
a different verdict had it heard the additional testimony. This reasoning
ignores the fact that throughout the eleven year odyssey of this case
the defendant has consistently denied any knowledge of the cocaine. The
defendant has now presented the trial court with extensive testimony
supporting his claim of actual innocence. Because it would be a gross
miscarriage of justice to now ignore this highly corroborating testimony
I dissent."

Justice McDade further goes on to say how the evidence relied upon to convict was

circumstantial at best and that the new evidence states that petitioner was not told about

the cocaine, was not present when it was loaded, and was not near where it was hidden.

(See Exhibits A & B). Justice McDade also points that officers who entered the RV for

the search testified that the cocaine was not visible (in plain sight) nor could they

smell anything indicative of drugs being present in the RV, and they had to call a

canine unit with a specially trained dog to locate the drugs where they found them

in hidden compartments throughout the RV[2]. (See Exhibit B). The justice also stated

that it was her opinion that if a rational trier of fact would have had a chance to

view this evidence that they would have ruled differently.

### State court's misstatement of the facts resulted in their misapplication of the law contradicting Supreme Court precedent

The state court's ruling of petitioner's actual innocence claim based on newly

discovered evidence was based on a misstatement of the      facts, contrary to federal

law, and far reaching in its  effort to deny the petitioner relief he was entitled

to based on the merits of this issue.

The Schlup and Herrera standards of actual innocence only apply in extraordinary

circumstances such as in the present case. As the appellate court ruled in its

reversal of the summary dismissal of this issue and in its dissenting opinion

the court acknowledged that a "miscarriage of justice" would occur if this tesimony

were ignored. In Murray v. Carrier, 477 U.S. 478, 495, 106 S. Ct. 2639, 91 L. Ed. 2d

---

2    The appellate court mistated the facts causing one to infer as if petitioner's
bag was concealed in a compartment with the cocaine and that means he would have
knowledge of the cocaine, but at the trial one of the arresting officers (officer
Blanks) testified that he opined that the petitioner's bag could have very likely
been pushed into the opening at the foot of the fold down bunk bed where petitioner's
bag was found. The bag was not completely pushed to the back of '    that space

397, the Supreme Court ruled; to implement the general principle that "comity and finality must yield to the imperative of correcting a fundamentally unjust incarceration." In accordance with the "gateway" standard of <u>Schlup</u> a claim must establish that in light of the new evidence "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." Absolute certainty of guilt or innocence is not required at the gateway stage of <u>Schlup</u>, and the evidence of petitioners co-defendant's testimony meets the gateway burden therefore, the court must yield to avoid a miscarriage of justice allowing an innocent man to remain in prison.

The likely impact of all the evidence on reasonable jurors must be taken into consideration when considering evidence not presented at trial. When a court makes these considerations based on accurate facts of the case they may be reliable, but when the facts have been misconstrued in order to deny relief as is the case here then the decision cannot be relied upon. First, the description of where petitioner's luggage was placed was totally wrong and the facts are misstated in a way to allow a denial of relief. Then, the chance meeting of the petitioner with his co-defendant in L.A. was made to seem as if it was impossible for such a thing to occur and clearly make him guilty of the charges. In, House v. Bell, 165 L. Ed. 2d 1, the trial court presented evidence of a blood stain on the clothing of the accused  that matched the blood of the victim, but it was later discovered that the blood spilled on the clothing during the transporting of the evidence. With this scenario in <u>House</u> being so coincidental in nature and the likelihood of such a thing happening being extremely low in probability, then can we not say that two people meeting by chance who are acquainted in another state while they are on vacation is so improbable when compared to the situation of the blood stain in <u>House</u>?

---

where the cocaine was found, but lodged about half way protruding out at one side of the length of the space under the bunk bed and his bag could be accessed without having to open the compartment revealing the hidden cocaine.

Although the blood stain and the petitioners meeting up with his co-defendants in L.A. have no relation petitioner uses this information to paint a picture of a situation that points almost assuredly to guilt as in House but in light of the new evidence later presented totally refutes that evidence previously relied upon. In petitioners' case no drugs were found on his person, the strongest evidence against him is mere presence in the vehicle, and from the point of arrest to the present he has maintained that he is innocent. The coincidental meeting in L.A. and the other evidence used to convict is far outweighed by the newly discovered evidence and if the standards of review in Schlup and Herrera are properly applied according to the facts without reaching so far beyond the scope and misstating the facts the lower court could never have denied relief and review is proper in this court on this issue.

The state courts application of People v. Molstad, 101 Ill 2d 128, 135, 461 N.E. 2d 398, 402 that; the newly discovered evidence "would not have been likely to produce a different result at trial", and People V. Coleman, 183 Ill. 2d 384, 701 N.E. 2d at 1073, that; no "manifest error" occurred is completely contrary to the truth when the facts are reviewed properly in light of all the evidence. In Molstad co-defendants presented affidavits that were exculpatory and the court determined the new evidence corroborating defendants testimony created "new issues" to be considered by the trier of fact. Such is the the same case in this matter before the court and as required by Coleman constitutes "manifest error" for relief in state court and when looked at in its true light contradicts Schlup because it meets the gateway standard that "more likely than not" no reasonable juror would find the petitioner guilty beyond a reasonable doubt in light of the newly discovered evidence.

In regards to applying the Schlup standard to the case at bar, the elements that are consistent are; that the new evidence presented is stronger than the evidence used to convict, and that it is likely that in light of the newly discovered evidence had the jurors been given the opportunity to review it no rational juror could have found the petitioner guilty beyond a reasonable doubt. When the Herrera standard is applied

21

(although a higher standard than <u>Schlup</u>) the new evidence creates the serious doubt required as to petitioners guilt where no rational juror could vote to convict had this evidence been present at trial. What is not consistent with the <u>Schlup</u> case is that there is no procedural default and although the <u>Herrera</u> case deals with free standing actual innocence claims where no constitutional error has occurred petitioner asserts a 6th amendment issue in this petition where the finding in favor or against the 6th amendment issue would still not bar the actual innocence claim according to the <u>Herrera</u> standard of actual innocence.

## CONCLUSION

For the above stated reasons, petitioner respectfully asks this court to issue an order granting his application for Writ of Habeas Corpus. Alternatively, petitioner asks this court to grant him an evidentiary hearing, so that all facts in dispute may be unearthed and brought before the court.


Respectfully submitted,

Armando Manrique #B79414
2600 N. Brinton
Dixon, Il. 61021

Dated _March 19th_____ , 2008.

## EXHIBIT "A"

Elken Montoya's affidavit, Newly discovered evidence

EXHIBIT "A"

STATE OF ILLINOIS,     )
                       )  SS
COUNTY OF WILL.        )

### A F F I D A V I T

I, Elkin Andres Montoya, being first duly sworn upon my oath, do hereby depose and state under the penalty of perjury that all of the facts, statements and information contained below  is true and correct in substance and fact to the best of my information and belief.

If called, I am competent to testify to the same.


1) I was charged in the Circuit Court of Henry County, Illinois with criminal offense relating to drug trafficking along with several codefendants, including Armando Manrique and Iraida Sanches.

2) During the criminal proceedings in the Circuit Court, my attorney never spoke to me regarding the possibility of me testifying in Armando Manrique's trial.

3) I was willing to testify at Manrique's trial, that he had no knowledge of the drugs which were found in a vehicle we were traveling in when arrested. I would have admitted at Manrique's trial that I knew of the drugs in the automobile, but that Manrique did not.

4) Mr. Manrique did not have any knowledge of the contraband contained in the vehicle either before or during our travel.

5) If called to Manrique's trial, I would have truthfully testified to Manrique's ignorance of the drugs, and would have

waived my Fifth Amendment right in order to provide this testimony, however, my attorney never advised me of any requests to testify at Manrique's trial.

6) Prior to Manrique going to trial on his pending charges, I testified at Iraida Sanchez's, and testified that she had no knowledge of the drugs and that I did. Had I been asked, I would have also testified at Manrique's trial in the same manner, and this testimony would have been truthful, voluntary and given freely.

**END OF AFFIDAVIT**

/S/ _____ K50208.
Elkin Andres Montoya
Reg. No. K-50208
Stateville C.C.
P.O. Box 112
Joliet Il., 60434

**SUBSCRIBED** and **SWORN** to before me
on this 11th day of October, 2001.

_____
Notary Public

> "OFFICIAL SEAL"
> Joann M. Dombrow
> Notary Public, State of Illinois
> My Commission Expires 12/18/02

Affidavit; page 2 of 2

**EXHIBIT "B"**

Justice McBride's dissenting opinion

EXHIBIT "B"

The text of this opinion may be changed
or corrected prior to the time for filing of a
Petition for Rehearing or the disposition
of the same.

No. 3--05--0899

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2007

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 14th Judicial Circuit, Henry County, Illinois |
|     Plaintiff-Appellee, | ) ) | |
|       v. | ) ) | No.  95--CF--3184 |
| ARMANDO MANRIQUE, | ) ) | Honorable Larry Vandersnick, |
|     Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE McDADE, dissenting:

The majority here affirms the trial court's judgment dismissing the defendant's petition on the grounds that the jury would not have reached a different verdict had it heard the additional testimony. This reasoning ignores the fact that throughout the eleven-year odyssey of this case the defendant has consistently denied any knowledge of the cocaine. The defendant has now presented the trial court with extensive testimony supporting his claim of actual innocence. Because it would be a gross miscarriage of justice to now ignore this highly corroborating testimony, I dissent.

The evidence relied upon to convict the defendant in this case was circumstantial at best. Specifically, it rested upon the inference that the defendant must have known about the bales of cocaine hidden in the mobile home. Montoya's testimony that defendant was not told about the

cocaine, was not present when it was loaded, and was not near the area where it was hidden not only corroborates his claim of actual innocence but also seriously undercuts the State's theory of possession. Even the officers who searched the mobile home admitted that upon entering the vehicle they failed to see or smell anything leading them to believe that the vehicle contained cocaine. Only through the assistance of a drug-sniffing dog were the hidden containers discovered. Examining the circumstantial nature of this case, in light of Montoya's corroborating testimony, I believe that the jury easily could have concluded that the defendant was not aware of the presence of the cocaine, especially in light of the fact that the cocaine was not observable by sight or smell but rather wrapped in black plastic and hidden.

While the trial court attacks the defendant's reliance upon the fact that this case was highly circumstantial, we have previously found that its circumstantial nature, combined with the omission of Montoya's testimony is sufficiently prejudicial to violate due process. *People v. Manrique*, 351 Ill. App. 3d 277, 281, 813 N.E.2d 1095, 1098-99 (2004). Upon remand for an evidentiary hearing, however, the trial court arbitrarily decided to disregard this finding. Specifically, the court stated:

> "Well, I think all possession of large quantities of cocaine are
> circumstantial cases. Nobody is going to have 900 pounds of
> cocaine on their person. More or less all of this, unless you have
> admissions or there is some other evidence...[is] no different than
> any other case where there's a large quantity of cocaine in a
> vehicle, trunk [or] motor home. [A]nd everybody in the car is

2

charged and most times they're all convicted."

Based on this language, it seems apparent that the trial court would simply have us find that mere presence "in a vehicle, truck [or] motor home" containing a "large quantity of cocaine" is sufficient to "convict" an individual of possession. While the majority accepts this proposition, I cannot. Accordingly, I would find that the circumstantial nature of this case, in light of Montoya's new testimony, does not defeat the defendant's claims of actual innocence but instead raises substantial concerns about a miscarriage of justice.

This suggested finding is supported by the Illinois Supreme Court's opinion in *People v. Molstad*, 101 Ill. 2d 128, 461 N.E.2d 398 (1984). In *Molstad*, the Court granted a new trial based on the newly discovered evidence of affidavits executed by the codefendants of the defendant. In that case, following a guilty verdict, defense counsel offered affidavits of four convicted codefendants and one aquitted codefendant that stated that the defendant had not been present at the scene of the crime. The supreme court concluded that those affidavits would create new issues to be considered by the trier of fact. *Molstad*, 101 Ill. 2d at 135, 461 N.E.2d at 402. The court reasoned that the evidence in that case likely would have produced a different result, because the testimony of the sole prosecution witness placing the defendant at the scene of the crime must have been weighed against the defendant's own corroborated alibi testimony as well as the testimony of the five codefendants. *Molstad*, 101 Ill. 2d at 135-36, 461 N.E.2d at 402. The court further held that the new affidavits could not have been discovered with the exercise of due diligence, since, "no amount of diligence could have forced the codefendants to violate their fifth amendment right to avoid self-incrimination [citation] if the codefendants did not choose to

3

do so." *Molstad*, 101 Ill. 2d at 135, 461 N.E.2d 402.

Applying the reasoning set out in *Molstad*, it is difficult to see how Montoya's testimony would not produce new questions to be considered by the trier of fact. Clearly, his testimony goes to the ultimate issue of whether defendant ever was in possession of the cocaine or even knew of its presence. I therefore believe that a different result is probable if the trier of fact considers Montoya's testimony. Of course, this does not mean that the defendant is innocent, merely that all of the facts and surrounding circumstances, including the testimony of Montoya, should be scrutinized more closely to determine the guilt or innocence of the defendant. See *Molstad*, 101 Ill. 2d at 135-36, 461 N.E.2d at 402. Accordingly, I would reverse the defendant's convictions for controlled substance trafficking, unlawful possession with intent to deliver a controlled substance and possession of a controlled substance and remand for a new trial.



MANRIQUE B-79444
2600 N Brinton Ave.
Dixon, Ill 61021

This Correspondence is From
An Inmate Of The Illinois
Dept Of Corrections

$ 04.60

Office of Clerk of the U.S.
United States Court Ho...
211 South Court St...
Rockford, Illinois 6...